May it please the Court, Robert Murdoch on behalf of plaintiffs' appellants in this matter, the Kwasniewski family. Your Honors, for over half a century, this Court has not changed fraudulent joinder jurisprudence. Plaintiff gets every inference, every benefit of the doubt, and any ambiguity at all about state law is decided in favor of the plaintiff. There are two elements to the issue of fraudulent joinders, Your Honor. One, if the plaintiff fails to state a cause of action against a resident defendant. And two, that failure is obvious according to the subtle law of the State. The burden is not on us. The burden is on the movant. The strong presumption is against removal jurisdiction. And as I stated, all inferences and all ambiguities are drawn in favor of the plaintiff. If the claim against the resident defendant is possible, then remand is mandatory. That is the law. And since at least the 1940s, in the Ninth Circuit, that's been the law. So what this Court needs to do is look at the complaint under Nevada law. If a cause of action against Ms. Leone is possible, then there's no fraudulent joinder. Under Nevada law, plaintiff's complaint placed Ms. Leone and BHO on notice of a possible cause of action, that being negligence. Whether the underlying theory was failure to warn or malpractice, the cause of action itself was negligence. Failure to warn is not even a cause of action. It's a theory of negligence. Let's say that we agree with the district court that the complaint, the way that it was alleged, was insufficient. So what you're complaining about next is that you should have been allowed to amend. Correct? No. No, because as the law is, we can't amend. You have to go by the complaint that was filed in the State court. The question is, would the State court allow you to amend? Not whether you actually file an amended complaint. That's what I'm getting at. Well, what case says that in terms of removal jurisdiction? The Ritchie case talks about it. I mean, the difference here is, the question is, does the original complaint state a claim? And your argument is, if it potentially could state a claim under the facts, if I'm understanding your argument, then the fraudulent jointer doctrine doesn't apply. Is that what your argument is? That is what our argument is, Your Honor. So under your theory, a district court would have to look behind a complaint and determine whether or not there was a potential cause of action? Yes, a potential claim. Yeah. As long as a claim is possible, that's what you do. And the reason is simple. The reason is 12b-6. It gets dismissed. It has to be impossible. If a claim is possible at all, it gets remanded, because we don't allow the district court of Nevada to start looking and deciding what laws in Nevada, things like that. We have to say, is it obvious to the settled rules of Nevada? Is it obvious to the settled law of Nevada? Even if it's not pled? Well, Your Honor, you're making an assumption, first of all, that it wasn't pled. No, no. I'm just talking about the general application of law. I'm not talking about this complaint. Oh, okay. So, I mean, let's assume hypothetically that really the claim is not pled at all. I mean, is your theory that the district court is obligated to look behind what was actually pled and determine whether or not there's a plausible State court action? Well, I wouldn't use the word plausible. Well, viable. But yes, I do, Your Honor, because otherwise there's a dismissal. That's the problem. Sure. And so even if it was a dismissal, let's say it was a 12b-6. So instead of a fraudulent joinder analysis, somebody filed a 12b-6. We would get a chance to amend. That's why. And clean up any deficiencies, any problems, things like that. That's why under the fraudulent joinder analysis, you should get a chance to amend — I don't mean that where we actually file an amendment, but where the court has to look at the complaint and say, well, wait a second, if they amended to clean up a deficiency, whatever that deficiency may be, sure, there's a possible cause of action there. That's it. But isn't that the question of amendment at a 12b-6 somewhat in Federal court, apart from the question of fraudulent joinder? I'm sorry? In other words, the analysis of fraudulent joinder is somewhat different from what happens after the district court determines that there's fraudulent joinder. Well, that's true. In other words, the district — there's nothing preventing the district court from granting — a district court from granting leave to amend after the case is properly in front of the district court. Well, that's true, except you're putting the cart before the horse. First, you have to have jurisdiction. And the only way you have jurisdiction is if there is real diversity. And then you have to go and undergo the fraudulent joinder analysis, Your Honor. Right. But I think where you're headed, maybe I was incorrect in what you were implying, is that you said the result is the case gets dismissed. That's not necessarily so. I mean, let's assume for the sake of argument that the district court correctly determined that or correctly applied the fraudulent joinder doctrine in asserted jurisdiction. Having asserted jurisdiction, the court can still then give you leave to amend under 12b-6. True? Well, yes, the court could. However, that defeats the purpose of the possibility rule. As long as there's a possible. If there's a possible claim, this Court always says, go back. So if you're going to allow an amendment to bring these people back in, what do you do then? There was a possible claim. If you can bring them back. But doesn't that run counter to our jurisprudence, which says you can't amend your way into curing a fraudulent joinder? You have to stand on the initial complaint. I think you have to stand on the original complaint. Right. Right. But the thing about standing on the original complaint is the question is not whether you actually pled a plausible, perfect complaint. The question is whether or not in State court they would allow you to amend to clean up any deficiencies so that there would be no issues. So leaving that argument aside, I gather you're still arguing that this complaint was sufficient. Under Nevada law, yes. Explain to me why. Okay. Because what we did is we placed defendants on notice. Under Nevada law, all you need is notice pleading. If you compare Form 9 to our complaint, that's all we did. Now, again, we absolutely concede this is not a model of Iqbal, Twombly type pleading. We agree with that. I mean, your theory wasn't pled. You have to concede that. That's right. But we don't have to plead a theory. U.S. Supreme Court law says we don't have to plead a theory. And, in fact, the Shelby case specifically said that just recently. It cited Wright and Miller and quoted, The Federal rules effectively abolished the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief. That's in the Shelby case. So, Your Honor, I agree. We didn't plead a theory. We don't have to. All we all the entire point of notice pleading in Nevada, the entire point, is to simply put them on notice. And that's what we did. We put Ms. Leone and BHO on notice that the decedent was a patient. Ms. Leone saw him on a particular date. She fell below the standard of care in her care and treatment, and he died as a result. That's it. Under Nevada law, that's sufficient for notice pleading. And if it isn't, let's say it isn't, and they file a 12B-5 under Nevada, we get a chance to amend, to clean it up. That's why this should be remanded, because we put them on notice. We did what we were supposed to do. That's why, Your Honor. Do you want to reserve some time? I do. Two minutes, Your Honor. Thank you. May it please the Court. My name is Eric Swann, and I represent Santa Fe Aventis, the appellee in this matter. For context, Your Honor, Ms. Leone's counsel, who joined in the briefs, has ceded his time to myself and Mr. Johnson, and I'll be taking nine minutes. Your Honors, I want to start with what you correctly identified as the erroneous standard for fraudulent joinder that the plaintiff has articulated in this case. The standard for fraudulent joinder in the Ninth Circuit is that the plaintiff fails to state a cause of action against the resident defendant, and that failure is obvious according to the settled rules of the State. It is not that the plaintiff has failed the state of cause of action and would be denied the ability to amend in State court. Let's talk about whether it was obvious under settled rules of the State. Sure. Why isn't what counsel said at the end of his presentation correct, that all he needed to do in order to move forward to the next stage in Nevada State court was to allege a duty of care, right, and that his client was a patient and there was a breach of a duty of care under the prevailing norms for the therapist? And so, therefore, as a result of that, his client passed away. Sure. Why isn't that enough to go forward? Okay, sure. I would answer that in two ways. First, I would say that under the court, the cases that we cite, the correct standard should be that Federal pleading standards apply in Federal court. But even the court probably need not even reach that issue, because while Nevada is a notice pleading State, so is the Federal courts. And in fact, their rules mirror largely the Federal rules. And the cases under Nevada law state, for example, that notice pleading requires the plaintiff to set forth facts which support a legal theory. And in this case, there were absolutely no facts pled to support, and the district court correctly found that there were no facts pled to put anyone on notice of this general malpractice claim for failure to diagnose Mr. Kwasniewski as suicidal. Nowhere in the complaint did it say he was suicidal on March 4th when she saw him. Nowhere did it say that she failed to diagnose him as suicidal. But it says she fell below the standard of care. Right. And as the district court found, that allegation was in the context of the failure to warn claim. In fact, nowhere in the complaint do they even say Mr. Kwasniewski committed suicide. And the fact is notice pleading at its basic requires you to be on notice of what the claim is. Nobody in this case ever was on notice that there was a malpractice claim for failure to diagnose. The district court's finding on that was not erroneous. And in fact, in looking at the context of the pleading, it was obvious that the only claim pled was the failure to warn claim. The negligence was failure to warn. But with regard to failure to warn, is it your position that there could never be a claim stated against therapists because their lack of training in prescription medication, or just under the circumstances as pled in this case, there's no claim for failure to warn? I would say, Your Honor, that under settled Nevada law, there is no duty for a marriage and family therapist to warn about the risks of medications prescribed by another  doctor. In the leading case, which is Klausch v. Walgreens, the Nevada state court adopted what is called the learned intermediary doctrine. And one note, the plaintiffs mention this in their briefing as an affirmative defense. It is not an affirmative defense. It is a statement of Nevada law that essentially says the duty to warn for prescription medications runs from the manufacturer to the doctor. And it is there, the doctor's determination, the prescribing physicians, who is the medical training, the knowledge of the individual patient's condition, the knowledge of the risks and benefits of the medication, to take all of that into account and decide whether or not to prescribe it to the consumer. The manufacturer has no duty to warn the consumer. It runs from the manufacturer to the doctor to the patient. And in this case, and the reason for that is essentially, for example, in the Klausch case, they recognized only a limited exception and only for pharmacists. And they found that requiring other health care providers to warn about the risks of a medication prescribed by others forces them in many instances, for example, a pharmacist, to practice medicine without a license, to interject themselves into the doctor-patient relationship and to second-guess decisions made by a prescribing doctor who is in the best position at the time with the training to weigh the risks and benefits. So, yes, I would say under settled Nevada law, the duty to warn for prescription medications is with the prescribing physician. And that defines the duty. And I gather from your answer that you would agree that if the learned intermediary doctrine were an affirmative defense, then we could not consider it. On the question of fraudulent joinder. Yes. That would be correct. But it is. No, I'm not. I'm taking the rest of your answer in tact. Yes. But there is a danger here of confusing the two because what's not permitted in fraudulent joinder is for the district court to evaluate a state law affirmative or Federal law affirmative defense in the context of joinder. You would agree with that? Yes. Yes, Your Honor. But the position is that the learned intermediary doctrine forms part of the cause of action. Absolutely. Absolutely. Because it is the definition. It defines the duty, the duties, who has the duty to warn about prescription medications. It's often some confusion with that, but it is in fact an element of who has the duty to warn. Well, as a theoretical matter, though, wouldn't a plaintiff be able to bring just a general malpractice claim that involves duty to warn in the specific context of that particular case? What I'm thinking about is let's say somebody goes to a therapist and is heavily on prescription medication that's known to cause suicidal thoughts and tells the therapist, I'm feeling very suicidal and these are the medications that I take, and alleges the general malpractice theory that under the standard of care for therapists within that profession that there should be knowledge that these drugs may cause side effects. Theoretically, could a plaintiff bring that sort of action under Nevada law? I would say no. Under Nevada law, the only two people who have a duty are the prescribers and the pharmacists. And even the pharmacists, I think what you're alluding to is kind of like a Klaus exception where the individual has ‑‑ Just the general legal malpractice case where there's a certain standard of care within the community, whatever that standard of care is as the therapist, I think that's going to be demonstrated at trial with expert testimony and so forth. And a claim that there was a breach of standard of care because other therapists would have known of this particular side effect given the ‑‑ what the patient is reporting to the therapist at that time. So you kind of try it as a regular malpractice case. Right. I would say no, because under Nevada law, it is the duty to warn runs ‑‑ is limited only to the prescribing doctors and to the pharmacists. Nevada does not, and in fact, warning about risks of prescription medication is practicing medicine without a license under Nevada's statute. And therapists are precluded from practicing medicine without a license. And it is outside their scope to do that. I just wanted to get back ‑‑ I understand that the duty on the pharmacist is imposed where there is knowledge that there may be some. Right. And in this case, in this case, the allegations nowhere said that she was suicidal at the time. And in fact, they later denied in their pleadings for motion for partial summary judgment that she had any knowledge or that he was even suicidal at the time. So even if that exception applied, it wouldn't be met here. But to go back just briefly to the fraudulent joinder standard, the cases they cite for the proposition that you can amend, that the standard should be whether you would be allowed to amend, has its genesis in the case, I believe, of Nickelberry v. Daimler Chrysler. They cite no case law to support that. And that standard, Your Honors, is simply unworkable. That would require a defendant in a district court. Let's say we get a case and we go to remove on fraudulent joinder. Not only would we have to say the claims in State court in the complaint fail the state of cause of action, but so would hypothetical claims for implied warranty of merchantability, implied warranty for a specific purpose, fraud, negligence. It's not the duty of the defendant to look at what was pled and then look in the universe of everything else that could be pled and say, look, I've gone through everything. They can't establish any cause of action, even the ones that they haven't alleged. It's based, as Your Honors noted, on the face of the complaint as stated in State court. And I'm over my time, so I'm going to pass. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. Michael Johnson representing Defendant in Appellee Behavioral Health Care Options, Inc., which has been sued based on a theory of vicarious fault only for the marriage and family therapist, Leon's, alleged misconduct. I'd like to address a couple of comments that were made by the Court. One was the — there was a comment that amendment may be permitted under Rule 12b-6 after there is a finding of fraudulent joinder. I would submit that once there is a finding of fraudulent joinder, that amendment is not governed by the 12b-6 standard. It would be governed by the standard under 28 U.S.C. Section 1447, subpart E, which gives the Court broad discretion to consider whether to allow amendment when a new defendant who is being brought into a case to destroy the Court's jurisdiction is proposed. So — Well, no, I was actually talking about the amendment for the theory, not to add a defendant or a party. Okay. And my point is simply once the fraudulent joinder finding is made and jurisdiction is established, then bringing in a new defendant would trigger the 1447 standard. All right. The second is in regard to whether an affirmative defense may form the basis for a finding of fraudulent joinder. And the Ritchie case, which was mentioned by counsel, actually did consider a statute of limitations defense as the basis for finding that the claims against the defendants, the nondiverse defendants in that case, were sham claims. Now, the Court did specifically say they were not resolving the issue of whether or not an affirmative defense could be considered in order to evaluate — Right. I think Ritchie's an outlier on that, in my view. And I'm going to be very honest with Your Honor. I don't know if there was a subsequent decision after that, which was 1998, which does address that case. But in my view, considering an affirmative defense would be appropriate, given the purpose and reason behind the fraudulent joinder rules, which is to really go beyond the pleading to see whether these defendants were added, the nondiverse defendants. No, I don't think the fraudulent joinder is intended to be a litigation on the merits. I think that's the whole theory, is that — I mean, that's why I may differ with you on that, is that if you start taking into account affirmative defenses, determining whether the claim itself was viable, then I think you've defeated the whole purpose of the limited inquiry of the fraudulent joinder statute. Correct. I mean, it's — it has some flexibility, I think is fair to say, because there are cases that say you can go beyond the pleadings, but then you're not deciding the merits. You're just, you know, looking at whether under the maternity standard — Well, you are, if you're saying the statute of limitation applies. That's true, Your Honor. But if it's obvious that a claim cannot be stated under settled State law, then there is a fraudulent joinder. I don't think there's a dispute about that standard. I want to emphasize in the two minutes that we have remaining the procedural posture of the case and the importance of that. There were three orders that were certified for review under Rule 54B by the district court. The first one was the motion to remand, which the district court, we believe, correctly granted or denied that motion to remand, which I understand is subject to de novo review. Then there was a motion for reconsideration, but there's been no assignment of error to the judge's decision to deny the motion for reconsideration. So then we move a year later or more to the motion for — motion to amend, which was treated as a motion to join new non-diverse defendants to destroyed jurisdiction and properly evaluated under the multi-factor test that is applied under the IBC aviation case and many other cases to the 1447E inquiry where there's a new defendant being added. Our view is that the trial court correctly applied the right legal standard and that the district court's decision after evaluating that multi-factor test in the written decision was not implausible, illogical, or unsupported by inferences in the record. And the reason I say that is to get to the point that the district court did not abuse its discretion in denying the motion for leave to amend. We feel that the district court's analysis of that issue and the decision is very well thought out, correct, and really does balance the factors, both the factors that maybe favor or consider the plaintiff's interests and also the factors that are not, because the multi-factor test does include elements that direct and guide the discretion of the court for both sides. So not hearing any further questions, we would submit the matter. Thank you. Roberts. Thank you, counsel. Your Honors, very briefly. You know, again, going back to 1944 in the Albee case, the court found that the plaintiff's action does not warrant removal, and it is universally thought that the motive for joining such a defendant is immaterial. It is only where the plaintiff has not, in fact, a cause of action against the resident defendant and has no reasonable grounds for supposing he has, and yet joins him in  said to be fraudulent. That's the Albee case. Your Honor, the point of that is that's why you have to look at could a State court – would a State court allow amendment, because the defect in the claim is immaterial. It's whether or not there is a claim. And you have to look beyond the inartfulness or the defectiveness of the complaint itself. You have to look at, okay, that aside, all the defects you want aside, is there a claim there? And if it's yes, it has to be remanded. Even if this Court has a doubt as to whether the negligence claim was an afterthought, if the claim was vague or even questionable at all, the claim is possible. Well, the district court concluded that the standard of care claim was made as part of a duty to warn, which is logical. So why doesn't it rise or fall on the duty to warn? Well, because, again, that's just a theory. That's one theory. And, again, it – Well, you know, we can look at factual scenarios and conjure up a lot of different theories that the plaintiff may or may not want to assert. Well – So, I mean, it seems to me that's an awfully hard burden for the district court to bear, to say, all right, now I've got to look at the universe of potential claims. The plaintiff is a master of his or her complaint. Why should I interfere with the plaintiff's choices? Well, especially when we tell the Court, though, that the issue is negligence. And that's what we did. In the motion to remand, we specifically told the Court that the issue was negligence. Your Honors. So explain your negligence theory to me. The one you want to assert. I'm sorry? The one you want to assert. The one we want to – Is it a malpractice claim, or is it a – Yeah, sure. It's a malpractice claim, Your Honor. On the part of the therapist? Yes. Yes. Yeah. And the malpractice is what? Failure to identify suicide, a suicidal patient. That's what it would be. Your Honor, just so we're clear, we did identify the negligence standard to Judge Navarro at ER0066, where I specifically stated the law of negligence in Nevada is very simple. I go through it, and I say the only question that bars whether Leon and VHO owed a duty of care to decedent Kwasniewski. That's it. It's the duty of care. Whether there was a breach of duty of care, that's a question for another time. As long as we identified a duty of care, that's sufficient. That's the cause of action. That's the negligence right there. The only way this Court can deny remand is if, after giving plaintiffs each inference and resolving all doubts in favor of plaintiff, all doubts in favor of plaintiff, that the complaint does not have any claim that are possible against Ms. Leon and VHO. Your Honor, even the failure to warn claim, even that claim, is questionable because of the customer-specific risk. We would have to undergo a whole merits analysis to determine whether or not the clash case even applies because of the customer-specific risk. That's why you can't just do that. You can't guess as to what Nevada law would be. What we do know is, as to pharmacists, yes, between pharmacist and doctor, the learned intermediary application doctrine applies. We know that. But we also know there's an exception, and that exception is if there's a customer-specific risk. Here we know that MFTs in Nevada have a duty to warn. They are foreseeable victims of foreseeable acts. We know there's a duty to warn of MFTs. Could you just give – you're talking about the universe of possible claims. What's your closest, most important case that tells us that we're supposed to look at that rather than what's actually on the pleading? The Hunter case. The Hunter case. The Ritchie case. The Sessions case. Virtually every case. The Gauss case. Virtually every case in the Ninth Circuit talks about possible claims, as long as there's a possible claim. The Hunter case says it specifically. Because what you want to do is, is there a possible claim out there? That's it. Actually, I'm sorry. It wasn't the Hunter case. It's the Ritchie case that says it. I apologize, Your Honor. Your time has expired, but I think we have your argument in hand. Thank you, both, for your arguments this morning. The case, as heard, will be submitted for decision.
judges: Schroeder, Thomas, Nguyen